**NATIONAL LABOR RELATIONS BOARD, Appellant,**

v.

**HANES HOSIERY DIVISION—HANES CORPORATION, Appellee.**

**No. 11202.**

United States Court of Appeals Fourth Circuit.

Argued June 2, 1967.

Decided Oct. 3, 1967.

Solomon I. Hirsh, Atty., N.L.R.B. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Marion Griffin, Atty., N.L.R.B., on brief) for appellant.

Whiteford S. Blakeney, Charlotte, N. C., (Blakeney, Alexander & Machen, Charlotte, N. C., on brief) for appellee.

Before HAYNSWORTH, Chief Judge, and BRYAN and WINTER, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge:

The National Labor Relations Board sought enforcement in the District Court of its subpoena, or in the alternative a mandatory injunction, against Hanes Corporation to compel production of its personnel and payroll records, or a list in lieu, setting forth the names and addresses of all its employees at its plants near Winston-Salem, North Carolina, who were eligible to vote in a scheduled election to determine whether Textile Workers Union of America, AFL–CIO, Hosiery Division should be their collective bargaining representative. The District Court declined to grant the requested orders and the Board appeals. We reverse.

The production was required by the election order, passed July 19, 1966; compliance was directed by July 26, with the election set for August 17, 1966. As well as providing that the records or list be filed with the Board's Regional Director well before the election, the order also directed him to make the data available to the union and all parties in interest.

Upon word of the corporation's refusal to obey the order, the election was postponed and the Director obtained a Board subpoena duces tecum to effectuate the production, pursuant to Section 11(1) of the National Labor Relations Act, 29 U.S.C. § 161(1). Despite denial of its petition for revocation of the subpoena, the corporation continued in noncompliance. Thereupon the present suit was instituted by the Board to force this discovery, the plaintiff relying specifically upon Section 11(2) of the Act, 29 U.S.C. § 161(2), and generally upon the equity jurisdiction of the District Court, 28 U.S.C. § 1337.[1] Sustaining the corporation's objections, the District Judge was of the opinion that the Act did not authorize the subpoena, and there was no jurisdiction for an injunction here. His view was that the data demanded was not "evidence" directly touching the cer-

---

1. 29 U.S.C. § 161: "Investigatory powers of Board

"For the purpose of all hearings and investigations, which, in the opinion of the Board, are necessary and proper for the exercise of the powers vested in it by sections 159 [certification of representatives] and 160 of this title—

"(1) The Board, or its duly authorized agents or agencies shall at all reasonable times have access to, for the purpose of examination, and the right to copy any *evidence* of any person being investigated or proceeded against that relates to any matter under investigation or in question. The Board, or any member thereof, shall upon application of any party to such proceedings, forthwith issue to such party subpoenas requiring the attendance and testimony of witnesses or the production of any *evidence* in such proceeding or in-vestigation requested in such application * * *."

"(2) In case of * * * refusal to obey a subpoena issued to any person, any district court of the United States * * * upon application by the Board shall have jurisdiction to issue to such person an order requiring such person to appear before the Board, its member, agent, or agency, there to produce *evidence* if so ordered, or there to give testimony touching the matter under investigation or in question * * *." (Accent added).

28 U.S.C. § 1337: "Commerce and antitrust regulations

"The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

tification of a representative. In this we think he erred.

Precedent cited for the contested order was the Board's rule announced in Excelsior Underwear, Inc. et al., 156 NLRB No. 111 (February 4, 1966). There an almost identical order was issued, justified as necessary to "promote the communication of election issues to the employees and to aid in challenging the ballots of employees believed to be ineligible to vote". In this case the question of the rule's validity is narrowed by the corporation's willingness to give the Director the employees' names and addresses in accordance with the prior "normal practice and procedure", that is just before the election and exclusively for the confidential inspection of the Director. This concession confined the use of the information to the Director solely for the ascertainment of those who were qualified to vote; it denied the union the right to retain or copy the list.

 The information sought by the Director in this case was in our judgment "evidence" of a "matter under investigation or in question" as contemplated by Section 11 of the Act, 29 U.S.C. § 161. One of the powers vested in the Board was the certification of employee representatives. Section 9, 29 U.S.C. § 159. The union's petition for the election invoked this power and engendered, as a reasonable incident, inquiry of who were the prospective balloters and the most advisable means of achieving a just and understanding expression of their preference. "The control of the election proceeding, and the determination of the steps necessary to conduct that election *fairly* were matters which Congress entrusted to the Board alone." (Accent added.) National Labor Relations Board v. Waterman S. S. Corp., 309 U.S. 206, 226, 60 S.Ct. 493, 84 L.Ed. 704 (1940). It seems to us that the Board could justifiably consider an early release of the qualified voters' names and addresses necessary to an intelligent election. An informed electorate is essential if the result of an election is to be accorded its intended significance and accomplish its aim. Altogether sound reasons were detailed by the Board for its *Excelsior* enunciation. The argument's logic is too obvious to warrant reiteration.

 Contrary to the employer's contention, we do not find the *Excelsior* rule violative of the Act's insistence upon an election "by secret ballot." Section 9(c)(1), 29 U.S.C. § 159(c)(1). The balloting itself remains unrevealed; the rule runs only to the pre-election period. Nor does the rule impinge the Act's assurance that the employees "shall also have the right to refrain from any or all . . . activities in connection with collective bargaining." Section 7, 29 U.S.C. § 157. Nothing is exacted of them. Disclosure to the union of their names and addresses is not an interference with the employees' right to organize as guaranteed by Section 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1). In truth it is an assist to this end.

Apprehension is expressed by the corporation lest divulgement of the records might expose the employees to harassment by the union organizers in solicitation of support. The answer is that every annoyance of the voters is shunned by the seasoned campaigner, and unions are not novices in this area.

There is fear, too, that the union could dispose of the information for commercial exploitation. The Board may be relied upon to adopt preventive sanctions against any such anticipated abuse, and deter it for the future by fitting penalties. Unveiling the information only on the day of election or a day or two before, the Board points out quite practically, causes challenges which would not occur if the parties had been pre-advised of the electors' qualifications.

 In sum, we think fairness in the elective process demands here, as it does in public or corporate elections, the opportunity of contesting parties to communicate their respective positions to the electorate. This includes such completeness of information, and timeliness of its dissemination, as will allow the voters to make a reasoned choice. The relief

prayed in the complaint should be afforded; it may be rested on either Section 11 of the Act, 29 U.S.C. § 161, or the injunctive powers of the District Court, 28 U.S.C. § 1337. We remand for such an order by that Court.

Reversed and remanded.